589 So.2d 336 (1991)
James MASSEY, Appellant,
v.
STATE of Florida, Appellee.
No. 90-1043.
District Court of Appeal of Florida, Fifth District.
October 31, 1991.
James B. Gibson, Public Defender, and Paolo G. Annino, Asst. Public Defender, Daytona Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Bonnie Jean Parrish, Asst. Atty. Gen., Daytona Beach, for appellee.

ON MOTION FOR REHEARING EN BANC
GRIFFIN, Judge.
We grant the state's motion for rehearing, withdraw our prior opinion and substitute the following opinion in its stead.
Appellant seeks reversal of his sentences as a habitual violent felony offender, contending that written notice of the state's intention to seek enhancement was not served upon him as required by section 775.084(3)(b), Florida Statutes.[1] For the reason set forth below, we affirm.
Appellant was initially represented below by counsel; however, shortly before trial, counsel withdrew and, at trial, appellant represented himself. In open court, during trial, the state announced and filed its notice of intent to have appellant sentenced as a habitual offender. The prosecutor did remark at the moment of filing that she hadn't had an opportunity to copy the notice but, beyond that, the record does not reflect whether defendant was ever given a copy of the notice.[2] The certificate of service *337 on the notice indicates a copy was served on the public defender who had represented defendant but who had, by this time, withdrawn.
At the close of the trial, after appellant was found guilty as charged, the trial judge announced in open court that a date for an adequate hearing would be necessary as the state had filed its notice of intent to habitualize. Most important, on May 7, 1990, one week before the sentencing hearing, appellant wrote the trial judge a letter reminding the court that:
On May 14, 1990 the defendant will come before the court for a hearing to be sentenced as an habitual offender. I would like to request this hearing be held in chambers. The information the defendant intends to offer the court for consideration is highly personal.
At the sentencing hearing, the public defender appointed to represent appellant in post trial proceedings objected only that she did not "have a copy of that notice in [her] file." If this was an objection that she had not been served a notice since her appointment on February 15, 1990  two weeks after the state filed the notice of intent to sentence appellant as a habitual offender in open court during the trial  it was properly overruled because at the time the notice was filed, the appellant was pro se. The only error the state could have made was to fail to give the appellant a copy of the notice. However, at the sentencing hearing there was no objection to any lack of notice to the appellant.[3]
Section 775.084(3)(b), Florida Statutes (1989), provides:

Written notice shall be served on the defendant and his attorney a sufficient time prior to the entry of a plea or prior to the imposition of sentence so as to allow the preparation of a submission on behalf of the defendant. (emphasis added).
In Nunziata v. State, 561 So.2d 1330 (Fla. 5th DCA 1990) and Sweat v. State, 570 So.2d 1111 (Fla. 5th DCA 1990), we held that a defendant need not show harm in order to assert a lack of written notice as reversible error. However, the issue in this case is not whether Massey must show harm in order to assert the lack of notice as error, but rather whether the state  by affirmatively proving no harm  can bring this technical error within the harmless error rule.[4]
While lack of any notice, written or otherwise, is a due process violation, lack of written notice, when actual notice is given, is not.[5] The statutory requirement for written notice is to insure (and offer a method of proof) that actual notice was given. In Roberts v. State, 559 So.2d 289, 291 (Fla. 2d DCA), dismissed, 564 So.2d 488 (Fla. 1990), the court stated:
While section 775.084(3) does, as defendant argues, state that such notice shall be served "on the defendant and his attorney," [only the attorney was served in Roberts] that section gives the purpose of that requirement as being "so as to allow the preparation of a submission on behalf of the defendant" in response to the notice. In this case there was such a response prepared and made on behalf of the defendant, thus the purpose of the *338 statute was fulfilled. We do not conclude that the legislature intended to permit a defendant to avoid the application of the statute on the technical grounds raised here. [Emphasis added.]
This decision was followed by Rowe v. State, 574 So.2d 1107, 1108 (Fla. 2d DCA 1990), rev. denied, 576 So.2d 290 (Fla. 1991) in which the court held:
While appellant's attorney was served with the notice that the state sought to habitualize appellant as is required by section 775.084(3)(b), that notice and the service thereon do not indicate that appellant was personally served with such notice. Our independent examination of the record below, however, reveals that appellant received actual notice of the state's efforts to habitualize him, appeared at the hearing for that purpose with his attorney, and actively contested the state's efforts. We conclude the notice to appellant was sufficient to support his being habitualized.
In the present case, as in Bradford v. State, 567 So.2d 911 (Fla. 1st DCA 1990), rev. denied, 577 So.2d 1325 (Fla. 1991), the state's intention to seek habitual offender status was announced in open court at the trial and well in advance of the subsequent sentencing hearing. The Bradford court concluded that such record notice meets the requirement of the statute, especially where, as here, the record also demonstrates that the defendant knew and understood the content of the notice and was fully prepared to present his case against habitual offender treatment. Id. at 915. In this case, an unusually detailed presentation, including a dissection of the PSI, was made on appellant's behalf by both appellant and his attorney at the sentencing hearing. If it is true, as appellant contends, that the purpose of the writing requirement is to be sure a criminal defendant is notified that the state will seek to have him sentenced as a habitual offender, the purpose of the statute was amply met in this case. Failure to deliver the writing to the defendant under the circumstances present here is harmless error at worst.
A close reading of Edwards v. State, 576 So.2d 441 (Fla. 4th DCA 1991), relied upon by the dissent, suggests it is consistent with our opinion in this case. In Edwards, the defendant agreed at his plea hearing to a habitual offender sentence. Even though no written notice was filed beforehand, the Edwards court makes clear this habitual offender sentence was legal. The court stated:
On May 8, 1989, appellant negotiated a settlement in which he was to be sentenced to nine years as an habitual felony offender.
* * * * * *
Appellant's status as an habitual offender was clearly discussed at the May 8 hearing; but the required written notice for sentencing as an habitual offender was not provided to him at that time. Thus, any sentencing over the nine years to which he agreed was not noticed as required by the habitual offender statute. (emphasis added.)
Id. at 441. Since section 775.084(3)(b) does not expressly exempt its application from negotiated plea cases, the Edwards court was not strictly applying the statute; it approved a habitual offender enhanced penalty based solely on the actual notice evidenced by the negotiated plea. The trial court's threat to sentence Edwards to 50 years if he did not appear for sentencing was a part of the discussion in which the court permitted pre-detention release. There was no discussion about the habitual felony statute. When Edwards failed to appear because he confused the date of the hearing (he turned himself in one week later) he was sentenced to fifty years under the habitual offender statute. The appellate court refused to approve this harsh result because Edwards had no notice  oral or written  that he would be sentenced as a habitual offender to more than nine years. The state's effort to cure this problem by serving written notice on the date of the sentence was ineffective. Unlike the present case, no reasonable argument can be made that what happened to Edwards at the June 21, 1990 hearing was the harmless result of a procedural error.
*339 Neither Bradford, Roberts, Rowe[6] nor this opinion ignores the legislative requirement of written notice, as the dissent suggests. We recognize that the failure to give such notice is a technical violation of the statute's procedural scheme,[7] but the legislature also mandates that:
No judgment shall be set aside or reversed, ... by any court of the state ... for error as to any matter of ... procedure, unless in the opinion of the court ... the error complained of has resulted in a miscarriage of justice.
§ 59.041, Fla. Stat. (1989). Here there is no contention that the habitual felony sentence imposed on defendant was a miscarriage of justice due to any lack of notice, preparation or proof  the argument concerns only noncompliance with the statutory form of notice. Here the record clearly shows, beyond any reasonable doubt, this appellant was fully prepared at the sentencing hearing to offer a submission on habitual offender treatment because he knew, a reasonable time before sentencing, that the state would seek to have the court sentence him as a habitual offender.
AFFIRMED.
DAUKSCH, COBB, W. SHARP and HARRIS, JJ., concur.
DIAMANTIS, J., dissents with opinion in which GOSHORN, C.J., and COWART and PETERSON, JJ., concur.
DIAMANTIS, Judge, dissenting.
I respectfully dissent.
Appellant alleges that his sentence as an habitual violent felony offender is improper because written notice of the state's intention to seek enhancement was not served upon him as required by law. See § 775.084(3)(b), Fla. Stat. (Supp. 1988). Written notice was served on his former attorney three days after that attorney had withdrawn as defense counsel. The record clearly demonstrates that written notice was neither served upon appellant nor did he specifically waive written notice. The state contends that because the requisite notice was filed of record and appellant had actual knowledge of such notice, the failure to provide appellant with written notice does not constitute reversible error in that the intent of the statute has been met, or, in the alternative, if there was error in failing to give appellant written notice, such error was harmless. I would reject these contentions.
Section 775.084(3)(b) provides:

Written notice shall be served on the defendant and his attorney a sufficient time prior to the entry of a plea or prior to the imposition of sentence so as to allow the preparation of a submission on behalf of the defendant. (Emphasis added).
If no advance written notice is served, a sentence as an habitual offender is illegal. Edwards v. State, 576 So.2d 441 (Fla. 4th *340 DCA 1991); Nunziata v. State, 561 So.2d 1330 (Fla. 5th DCA 1990); Grubbs v. State, 412 So.2d 27 (Fla. 2d DCA 1982). If appellant's habitual offender sentence is illegal, I submit that it cannot be made legal by interpreting this clear statutory mandate as a merely "technical" requirement, a "matter of procedure" or "harmless error." In Grubbs v. State, 412 So.2d at 27, the court held that when the record reveals that no advance written notice was given the defendant, his sentence as an habitual offender was illegal and subject to correction by a motion for post-conviction relief under rule 3.850 of the Florida Rules of Criminal Procedure.[1]
Failure to provide advance written notice constitutes reversible error and a defendant is not required to demonstrate harm because lack of harm is not the test. Edwards, 576 So.2d at 442; Sweat v. State, 570 So.2d 1111 (Fla. 5th DCA 1990); Nunziata, 561 So.2d at 1331. The fact that a defendant is not surprised by his classification as an habitual offender is irrelevant. In Edwards, after the defendant entered his plea of guilty, the defendant was put on record notice in open court that if he failed to appear for sentencing he would receive a sentence of fifty years imprisonment as an habitual offender instead of the negotiated nine year habitual offender sentence. The defendant then failed to appear for his first sentencing date and as a result the trial court sentenced him as an habitual offender to a term of fifty years imprisonment. At his subsequent sentencing hearing the defendant was served with the requisite written notice of intent to habitualize. On appeal, the court in Edwards followed our rulings in Sweat and Nunziata, as well as following Grubbs, and held that the fact the defendant was not surprised by his classification as an habitual offender was irrelevant and that the written notice provided defendant was legally insufficient because defendant did not receive the required advance written notice. The majority attempts to paint a judicial gloss over Edwards by stating, "the Edwards court was not strictly applying the statute." However, the specific language of Edwards clearly contradicts the majority's statement:
If no advance written notice is provided, a sentence as an habitual offender is illegal. Grubbs v. State, 412 So.2d 27 (Fla.2d DCA 1982). See also Nunziata v. State, 561 So.2d 1330 (Fla. 5th DCA 1990) (no advance written notice of state's intent to seek enhancement of sentence in accordance with statute, any subsequent habitual offender enhancement is illegal; lack of harm to defendant not the test).
The state's contention that appellant was not surprised by the classification is irrelevant because lack of harm to the defendant is not the test used. Nunziata, 561 So.2d at 1331; see also Sweat v. State, 570 So.2d 1111 (Fla. 5th DCA 1990) (failure to serve advance written notice of state's intent to seek enhanced sentencing constitutes reversible error; defendant need NOT demonstrate harm). (Emphasis in original).
576 So.2d at 442
Moreover, Roberts v. State, 559 So.2d 289 (Fla. 2d DCA), cause dismissed, 564 So.2d 488 (Fla. 1990), and Rowe v. State, 574 So.2d 1107 (Fla.2d DCA 1990), rev. denied, 576 So.2d 290 (Fla. 1991) do not support the majority's opinion.[2] These decisions hold that advance written notice to the attorney is sufficient regardless of whether the defendant has received such written notice. This result is consistent with rule 3.030(a) of the Florida Rules of Criminal Procedure which provides that every written motion, unless it is one as to *341 which a hearing ex parte is authorized, and every written notice, demand, and similar paper shall be served on each party. Rule 3.030(b) further provides that where service is required or permitted to be made upon a party represented by an attorney, service shall be made upon the attorney unless service upon the party himself is ordered by the court. Rule 3.030 and section 775.084(3)(b) are consistent in requiring advance written notice. However, the rule specifically and unequivocally governs service where a party is represented by an attorney. In this instance, service must be made upon the attorney unless the court orders otherwise. In both Roberts and Rowe there was advance written notice, unlike this case.
In Judge v. State, 16 F.L.W. D2337, 1991 WL 170839 (Fla.2d DCA September 6, 1991), the Second District held that even if the defense attorney was served with notice of intent to habitualize but the defendant himself was not personally aware of the possibility of an habitual offender sentence, the defendant would be entitled to relief under rule 3.800(a) to correct an illegal sentence. Judge reaffirms Grubbs and Ivey. Both the majority and concurring opinions in Judge recognize that failure to provide advance written notice renders any subsequent habitual offender sentence illegal. Both opinions in Judge recognize that under the facts of that case where defense counsel received written notice, the defendant would not have to receive written notice if the defendant had prior knowledge that he could be sentenced as an habitual offender. The concurring opinion points out that, if the defendant did have such prior knowledge, the requirements of Roberts would be satisfied.
I concede that Bradford v. State, 567 So.2d 911 (Fla. 1st DCA 1990), rev. denied, 577 So.2d 1325 (Fla. 1991) appears to support the majority's position that record notice is sufficient. However, Bradford fails to address the point that the failure to provide the required advance written notice renders any subsequent habitual offender sentence illegal. The majority argues that its holding is not contrary to our prior rulings in Nunziata and Sweat because it is not requiring the defendant to show harm, but instead is allowing the state to show lack of harm. However, both Nunziata and Sweat expressly hold that lack of harm to the defendant is not the test. See also Edwards; Grubbs.
This case is analogous to the situation where a trial court gives record reasons for departing from a guidelines sentence but fails to provide written reasons for its departure.[3] Clearly, the guidelines departure is reversible error. Pope v. State, 561 So.2d 554 (Fla. 1990). The defendant in the guidelines situation is not required to show harm nor can the state claim that the sentence is proper due to lack of harm because harm is not the test. If a trial court must follow the requirement of providing written reasons in a departure case, there is no logical basis to rule that the state is not required to give advance written notice as mandated by the habitual offender statute. Pope does not merely stand for the sole proposition that written findings are necessary for proper judicial review: record findings would normally suffice for this purpose. However, Pope goes further and enforces the requirement for written reasons by mandating that any departure sentence must be accompanied by contemporaneous written reasons and that failure to provide those written reasons is per se reversible error.
I do not consider it my function as a judge, under the guise of judicial interpretation, to rewrite a statute which is clear on its face and has been interpreted by several decisions based upon its plain and clear meaning to require advance written notice, without which any habitual offender sentence imposed is illegal. I cannot say that this interpretation is unreasonable. To require the state to give this requisite notice does not place any undue burden upon it. If we are now to allow non-written notice to suffice, we are opening the door to a requirement of deciding on a case-by-case basis whether non-written notice is sufficient. If the legislature desires *342 such a result, it should amend the statute and delete the word "written".
Regardless of its protestations to the contrary, the majority opinion is in conflict with the Second District's opinions in Grubbs, and Ivey, the Fourth District's opinion in Edwards, and the rationale of Pope. Also, even with its disclaimers, the majority has cast serious doubt upon the viability of our earlier cases of Nunziata and Sweat. Because of this conflict, I would certify this matter to the Florida Supreme Court.
Accordingly, I would affirm appellant's convictions and vacate appellant's sentences as an habitual violent felony offender and remand this case for resentencing.
GOSHORN, C.J., and COWART and PETERSON, JJ., concur.
NOTES
[1] Appellant has also appealed his convictions for burglary of a dwelling and grand theft but we find no merit in the issues raised and affirm these convictions without further discussion.
[2] No objection was raised at the sentencing hearing concerning notice to appellant so this subject was not discussed at the sentencing hearing nor was evidence taken on this issue.
[3] In response to defense counsel's objection that she did not have the notice, the trial court stated: "Both you and the office of the Public Defender and Mr. Massey were well aware of the fact that the state was going to seek habitual offender status." Defense counsel did not dispute the court's statement, merely responding: "I just wish to register my objection for the record, your Honor."
[4] The dissent insists that Nunziata, cited above, and Grubbs v. State, 412 So.2d 27 (Fla.2d DCA 1982) require a finding that a habitual offender sentence without written notice is illegal. But these cases must be interpreted in light of their facts. In both Nunziata and Grubbs there is no indication that any notice was given. These cases did not consider the effect of proven actual notice. We are now asked to review this issue based on the new fact of actual notice. It is our function as judges to do this.
[5] We cannot agree with the dissent's effort to equate the procedural defect of oral notice given by the state in lieu of written notice and the failure of the court to issue written reasons for departure from the sentencing guidelines. The latter is plainly a substantive expression of judicial findings necessarily written in order to permit proper judicial review. Pope v. State, 561 So.2d 554, 555 (Fla. 1990).
[6] Even the dissent concedes that the "clear legislative mandate" that written notice must be given to both the defendant and his attorney isn't really mandatory. Service on the attorney is sufficient because Rule 3.030 prevails over the statutory requirement. But that rule also provides that there need be no service of orders made in open court. Under the dissent's theory, once the court announced (ordered) in open court that it would schedule a date for an adequate hearing on the state's motion to habitualize appellant, the purpose of the statutory notice requirement was achieved.
[7] Although the dissent insists the lack of written notice is not subject to harmless error analysis because the sentence was illegal, the term "illegal" as used in Grubbs and Nunziata, must mean there was a violation of due process. A sentence is not illegal simply because a statute was violated. See Johnson v. State, 557 So.2d 223 (Fla. 1st DCA), rev. denied, 563 So.2d 632 (Fla. 1990). It should be noted that it was the legislature  not the majority  that made the requirement that notice be written merely a procedural requirement. Section 775.084(3), Florida Statutes (1989) states:

In a separate proceeding, the court shall determine if the defendant is a habitual felony offender... . The procedure shall be as follows:
* * * * * *
(b) Written notice shall be served on the defendant and his attorney a sufficient time prior to entry of a plea or prior to imposition of sentence so as to allow the preparation of a submission on behalf of the defendant. (emphasis added).
Nunziata and Grubbs stand on another plane entirely.
[1] If the requirement of advance written notice is merely a technical requirement or a procedural matter or an error that can be waived or rendered harmless, Grubbs would have been barred from raising the issue for the first time by a motion for post-conviction relief. If failure to give advance written notice is only a procedural due process violation, as the majority contends, Grubbs could not have raised this issue in his motion for post-conviction relief. See Ivey v. State, 500 So.2d 730 (Fla.2d DCA 1987).
[2] It should be noted that Roberts and Rowe, upon which the majority rely, were decided by the second district, the same court that decided Grubbs.
[3] See § 921.001(6), Fla. Stat. (1989); Fla. R.Crim.P. 3.701(d)(11).